## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSHUA BATISTA,

                Plaintiff,

    v.

AT&T INC.,

                Defendant.

Civil Action No. 24-cv-8503 (JXN)(MAH)

**OPINION**

**NEALS**, District Judge:

Before this Court is Defendant AT&T Inc.'s ("AT&T") motion to dismiss *pro se* Plaintiff Joshua Batista's Complaint (ECF No. 1) ("Compl." or "Complaint") for lack of personal jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 8). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, AT&T's motion to dismiss the Complaint (ECF No. 8) is **GRANTED**, and the Complaint (ECF No. 1) is **DISMISSED without prejudice**, except for Counts Three through Five, which are **DISMISSED with prejudice**.

## I.    BACKGROUND AND PROCEDURAL HISTORY[1]

According to the Complaint, Plaintiff is a former employee of AT&T's "Mobility Department" where he was employed from October 2014 to January 2024. (Compl. ¶ 6). While

---

[1] Pro se complaints are construed liberally and are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pro se litigants must still allege facts, taken as true, to suggest the required elements of the claims asserted. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

working for AT&T for nearly a decade, Plaintiff "accrued and accumulated $13,521.62 USD in a Bargained Cash Balance #2 Program of the AT&T PBP held in a Trust fund with Fidelity Investments." (*Id.* at ¶ 28). Plaintiff argues AT&T refuses to release the vested funds in a single payment, as requested. (*Id.* at ¶ 29).

Plaintiff has also maintained an active mobile service account with AT&T since 2013, and an equipment installment plan. (*Id.* at ¶¶ 7, 22). Plaintiff alleges that his account is "an accounts receivable and asset backed security with [AT&T] which [AT&T] pledges as collateral to third-party investors as a means for [AT&T] to raise capital." (*Id.* at ¶ 18). According to AT&T's Form 10-K for the fiscal year ending December 31, 2023 filed with the Securities and Exchange Commission ("SEC"), AT&T states:

> We have agreements with various third-party financial institutions pertaining to the sales of certain types of our accounts receivable. The most significant of these programs consists of receivables arising from equipment installment plans, which are sold for cash and beneficial interests, such as deferred purchase price, when applicable. Under the terms of our agreement for this program, we continue to service the transferred receivables on behalf of the financial institutions.

(*Id.* at ¶ 19). Plaintiff argues AT&T is unjustly enriching itself by "pooling, selling, transferring, conveying, and pledging Plaintiff's accounts receivable, equipment installment plan and asset backed security" and "sells their consumer's equipment installment plans for cash and beneficial interest." (*Id.* at ¶¶ 20-21).

Further, as an "investor" in AT&T, Plaintiff's account is credited each month for dividend payments. (*Id.* at ¶¶ 24-25). According to the Complaint, AT&T has "knowingly and willingly participate[d] in extortion and peonage against Plaintiff by deceptively redeeming Plaintiff's credits on account and demanding Plaintiff, under threat and coercion in the event of a 'non-payment' of debt notes (Federal Reserve Notes) to Plaintiff's already credited account." (*Id.* at ¶

26). If Plaintiff does not pay, then AT&T "unlawfully disrupts and suspends Plaintiff's service" and "add[s] frivolous and fraudulent charges and fees to Plaintiff's account." (*Id.* at ¶ 27).

On August 16, 2024, Plaintiff filed a Complaint against AT&T. (*See* Compl.). In the Complaint, Plaintiff raises ten claims against AT&T: (1) breach of contract (Count One); (2) breach of fiduciary duty (Count Two); (3) laundering of monetary instruments, 18 U.S.C. § 1956 (Count Three); (4) transportation of stolen securities, 18 U.S.C. § 2314 (Count Four); (5) securities and commodities fraud, 18 U.S.C. § 1348 (Count Five); (6) peonage, 18 U.S.C. § 1581 (Count Six); (7) enticement into slavery, 18 U.S.C. § 1583 (Count Seven); (8) sale into involuntary servitude, 18 U.S.C. § 1584 (Count Eight); (9) forced labor, 18 U.S.C. § 1589 (Count Nine); and (10) benefitting financially from peonage, slavery, and trafficking in persons, 18 U.S.C. § 1593A (Count Ten). (*Id.*)

On October 8, 2024, AT&T filed a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), and 12(b)(3). (ECF No. 8) ("Br."). Plaintiff opposed the motion (ECF No. 12) ("Opp'n"), to which AT&T replied. (ECF No. 13) ("Reply").

Thereafter, on November 12, 2024, Plaintiff filed additional opposition to AT&T's motion without leave of this Court. (ECF No. 14) ("Sur-reply"). Local Civil Rule 7.1(d)(6) states that "[n]o sur-replies are permitted without permission of the Judge to whom the case is assigned." Given Plaintiff's *pro se* status, the Court will consider the sur-reply. *See Richardson v. Cascade Skating Rink*, No. 19-8935, 2022 WL 2314836, at *2 n.1 (D.N.J. June 28, 2022) (considering a sur-reply filed by a pro se plaintiff without prior leave of court due to the greater leeway afforded to pro se litigants (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)). Accordingly, the motion is ripe for the Court to decide.

II.    <u>**LEGAL STANDARD**</u>

A.    <u>**Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)**</u>

A complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Challenges to subject matter jurisdiction can be either 'facial' or 'factual.'" *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In considering a Rule 12(b)(1) motion to dismiss, a district court must first determine whether the motion "attack[s]" (1) the complaint as deficient on its face; or (2) "the existence of subject matter jurisdiction in fact, . . . apart from any pleadings." *Mortensen*, 549 F.2d at 891.

A "facial attack" asserts that the "plaintiff did not properly plead jurisdiction," whereas a "factual attack" involves an averment that "jurisdiction is lacking based on facts outside of the pleadings . . . ." *Smolow*, 353 F. Supp. 2d at 566 (citation modified). In a "facial attack", the court must "consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citation modified). When a party has yet to answer the Complaint or engage in discovery, the motion to dismiss is a facial attack on the Court's subject matter jurisdiction. *See Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial"). On a "factual" attack, the Court may "weigh and consider evidence outside the pleadings" and no "presumptive truthfulness attaches to the plaintiff's allegations." *Id.* at 346 (cleaned up). In both scenarios, the plaintiff bears the burden of proving jurisdiction. *Id.*

Federal Courts lack jurisdiction to consider claims that "are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly

unsubstantial, or no longer open to discussion." *DeGrazia v. FBI*, 316 F. App'x 172, 173 (3d Cir. 2009) (citation modified); *see also Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989) ("A patently insubstantial complaint may be dismissed . . . for want of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Allegations that meet this standard are those that make out "fantastic scenarios" that "lack[ ] any arguable factual basis." *DeGrazia*, 316 F. App'x at 173.

### B.  Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have [all] allegations taken as true and [ ] factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation modified).

Despite having all reasonable inferences drawn in its favor, the plaintiff cannot rely on the bare pleadings alone to defeat a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Patterson*, 893 F.2d at 603 (quoting *Time Share Vacation Club*, 735 F.2d at 67 n.9). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson*, 893 F.2d at 603-04 (quoting *Time Share Vacation Club*, 735 F.2d at 67 n.9).

## C.  Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is inappropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citation modified). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine a complaint's sufficiency, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[ ] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation modified).

## III.  DISCUSSION

### A.  The Court Does Not Have Jurisdiction Over AT&T

AT&T argues that the Court lacks general or specific jurisdiction over AT&T, and, as such, all claims against it should be dismissed. (Br. at 40-47).[2] In opposition, Plaintiff contends AT&T has maintained sufficient contacts with him in New Jersey and submitted "SEC filings under the

---

[2] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

exact name," AT&T. (Sur-reply at 7-8). The Court agrees with AT&T and dismisses the Complaint for lack of personal jurisdiction over AT&T.

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state[ ]" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citation modified). The inquiry involves a two-step process: first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)).

Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not 'offend traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe*, 326 U.S. at 320).

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.*, 471 U.S. at 474 (citing *International Shoe*, 326 U.S. at 316). A defendant must have "'fair warning'" that its conduct will subject it to the jurisdiction of a foreign court. *Burger King Corp.*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*,

433 U.S. 186, 218 (1977) (Stevens, J., concurring)). A defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction through minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 324 (3d Cir. 2007). A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant.[3] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a defendant is subject to a forum's general jurisdiction, he or she can be sued there on any matter. *Id.* If, however, a defendant is solely subject to specific jurisdiction, he or she may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

### i.  General Jurisdiction

"General (or 'all-purpose') jurisdiction permits a court to hear any and all claims against a defendant brought within a certain forum, even if those claims have nothing to do with any actions the defendant took in the forum." *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (citing *Goodyear*, 564 U.S. at 923). The sweeping "breadth" of such jurisdiction imposes one "correlative limit." *Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 592 U.S. 351, 358 (1945).

---

[3] Personal jurisdiction can also be obtained through consent, waiver, or in-state service on an individual defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar Cnty. Adult Det. Ctr.*, 332 F. App'x. 718, 719 (3d Cir. 1999) (regarding consent).

The question is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *International Shoe*, 326 U.S. at 317. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924 (citation modified). With respect to a corporation, the paradigmatic forum is the place of incorporation and principal place of business.[4] Daimler, 571 U.S. at 137 (citation modified).

As a threshold matter, it is clear the Court lacks general jurisdiction over AT&T. (Br. at 40-42). Plaintiff does not appear to contest this point. (*See* Sur-reply at 7-8). AT&T is an entity that is incorporated in Delaware and has its principal place of business in Texas. (Declaration of Paula M. Phillips ("Phillips Decl."), ECF No. 8-2 at ¶¶ 8-9; Compl. ¶ 5). AT&T "does not manufacture, distribute, or provide any products or services that could find their way into New Jersey." (Phillips Decl. ¶ 10). AT&T's contacts with New Jersey are not "so continuous and systematic" as to render AT&T essentially at home in the State, and thus, the Court finds AT&T is not subject to general personal jurisdiction, *Daimler*, 571 U.S. at 127, and will confine the inquiry to whether to exercise specific jurisdiction over AT&T.

---

[4] The defendant's "contacts need not relate to the subject matter of the litigation[,]" *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004), but must rise to "'a very high threshold of business activity.'" *Id.* (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 890 n.2 (3d Cir. 1981) (Gibbons, J., dissenting)). The facts required to establish sufficient contacts for general jurisdiction must be "'extensive and persuasive.'" *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (quoting *Compagnie*, 651 F.2d at 890 (Gibbons, J., dissenting)). In other words, the plaintiff must demonstrate "significantly more than mere minimum contacts to demonstrate general jurisdiction." *Provident Nat'l Bank*, 819 F.2d at 437.

ii. **Specific Jurisdiction**

"Specific" or "case-linked" jurisdiction depends on an affiliation between the forum state and the defendant's "suit-related conduct." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-15, n.9). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King*, 471 U.S. at 475 n.18). But "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (quoting *Keeton v. Bustier Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259.

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (citation modified). This factor has also been characterized as "purposeful availment," and focuses on contact that the defendant itself created within the forum state. *Burger King*, 471 U.S. at 475. The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as [the] result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person[.]" *Id.* (citation modified). "Second, the plaintiff's claims 'must [also] arise out of or relate to' the defendant's activities." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *O'Connor*, 496 F.3d at 317); *see also Helicopteros*, 466 U.S. at 414. "[T]hird, exercising personal jurisdiction must

not 'offend traditional notions of fair play and substantial justice.'" *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317); *see also International Shoe*, 326 U.S. at 316.

First, the Court assesses whether AT&T purposefully directed its activities at the forum, New Jersey. AT&T has put forth affidavit evidence establishing that: (i) AT&T is a holding company that is legally and factually distinct from its subsidiaries, including AT&T Mobility LLC and AT&T Services; (ii) AT&T "does not manufacture, distribute, or provide any products or services that could find their way into New Jersey"; (ii) AT&T "does not conduct business directly with the public"; (iii) AT&T does not maintain "any employees, sales representatives, or distributors"; (iv) AT&T "does not own, lease, manage, or maintain any real property, office, residence, or place of business in New Jersey"; (v) AT&T "does not do business in New Jersey"; and (vi) AT&T "is not registered, licensed, or otherwise qualified to do business in New Jersey." (Phillips Decl. ¶¶ 6, 10-13, 15-18).

Plaintiff seems to argue the Court has specific personal jurisdiction over AT&T because it has "ongoing interactions and recent mailings with Plaintiff in New Jersey." (Sur-reply at 7). This purported evidence fails to establish AT&T purposefully directed its activities to New Jersey. While "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction" *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (emphasis added), Plaintiff fails to provide any evidence in support of the "ongoing interactions and recent mailings." Additionally, "a plaintiff's unilateral activity does not establish the requisite minimum contacts necessary to exercise personal jurisdiction over a nonresident defendant." *WorldScape, Inc. v. Capital Mgmt.*, No. 10-4207, 2011 WL 3444218, at *5 (D.N.J. August 5, 2011) (citing *World-Wide Volkswagen*, 444 U.S. at 298).

11

Plaintiff does not raise any allegations that AT&T, at any time, initiated contact with him. Accordingly, Plaintiff fails to establish that AT&T purposefully directed its activity to New Jersey.

Since all three elements of the test must be met to establish specific personal jurisdiction, the Court need not consider the remaining two elements. *See O'Connor*, 496 F.3d at 317.

### iii. Alter Ego Personal Jurisdiction Over AT&T Through AT&T Mobility LLC

To the extent Plaintiff appears to argue that alter ego jurisdiction exists over AT&T through AT&T Mobility LLC, that argument similarly fails.

There is no clear approach to determining if a non-resident corporation is subject to jurisdiction in the forum where its subsidiary or distributor is located. *See Daimler*, 571 U.S. at 136. The Supreme Court has held that even if a subsidiary is "at home" in the forum, its parent is not automatically and equally subject to general jurisdiction there. *Id.* at 136-37. Put differently, "the 'use of a subsidiary does not necessarily subject the parent corporation' to [personal] jurisdiction" where the subsidiary is located. *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, No. 02-6030, 2004 WL 7338471, at *5 (D.N.J. Oct. 28, 2004) (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925)). The Third Circuit has held, however, that "if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (citation modified). But even where a subsidiary corporation may have sufficient contacts with the forum state to establish personal jurisdiction, a plaintiff must show "more than mere ownership" in order to impute those contacts to the parent company. *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004); *Pfundstein v. Omnicom Grp., Inc.*, 666 A.2d 1013, 1016 (N.J. Super. Ct. App. Div. 1995). "The activities of a parent company are imputed

to the subsidiary only if the subsidiary is the parent's agent or alter ego so that 'the independence of the separate corporate entities was disregarded.'" *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) (quoting *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 806 (3d Cir. 1981)). This alter ego theory of personal jurisdiction derives from New Jersey's veil-piercing doctrine, requiring the jurisdiction-proponent to show the following two elements:

> (1) the subsidiary was an alter ego or the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent and (2) the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise circumvent the law.

*Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4841610, at *4 (D.N.J. July 28, 2023) (citation modified); *see also Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) ("[T]he alter ego theory of jurisdiction requires a finding similar to piercing the corporate veil.") (citation modified); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (explaining that piercing the corporate veil is reserved for circumstances where equity demands that the corporate form be disregarded, such as to "'prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime'" (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967))). In addition, piercing the corporate veil is not a mechanism by which legal liability is imposed per se, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form. *State Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 158 (N.J. 1983) (citation modified). Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil. *Id.*

In deciding whether a subsidiary was "merely a conduit for the parent," courts consider various factors—for instance, the "'failure to observe corporate formalities, gross undercapitalization, absence of corporate records, siphoning of funds of the corporation, and the

corporation's existence as a facade for the operations of the dominant stockholder.'" *Napoli v. First Choice Loan Servs., Inc.*, No. 19-7265, 2020 WL 39148, at *5 (D.N.J. Jan. 3, 2020) (quoting *Westfield Ins. v. Interline Brands, Inc.*, No. 12-6775, 2013 WL 6816173, at *21 (D.N.J. Dec. 20, 2013)). Other factors include "'who the subsidiary does business with other than the parent;'" "'the day-to-day involvement of the parent's directors, officers and personnel with the subsidiary;'" and "'the payment of the subsidiary's salaries and expenses by the parent.'" *Laverty v. Cox Enters., Inc.*, No. 18-1323, 2019 WL 351905, at *4 (D.N.J. Jan. 29, 2019) (quoting *Seltzer*, 339 F. Supp. 2d at 610); *see also Horowitz v. AT&T Inc.*, No. 17-4827, 2018 WL 1942525, at *8 (D.N.J. Apr. 25, 2018) (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008), for additional factors). In considering whether the subsidiary was "merely a conduit for the parent," it is not uncommon for the parent and subsidiary to have overlapping boards of directors. *See Horowitz*, 2018 WL 1942525, at *8 (citation modified); *see also United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[It is a] well-established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership.") (citation modified). Understanding that there may be overlap between the board of directors of the parent company and subsidiary, courts have held that overlapping boards of directors cannot establish a parent company's domination or control of its subsidiary. *Leo v. Kerr-McGee*, No. 93-1107, 1996 WL 254054, at *6 (D.N.J. May 10, 1996) ("A significant degree of overlap between directors and officers of a parent and its subsidiary does not establish an alter ego relationship."). There is a general presumption "that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," so dual office holding alone is not sufficient to establish liability. *Bestfoods*, 524 U.S. at 69 (citation modified). In all events, "for personal jurisdiction, the Court avoids any 'bright-line test.'" *See*

14

*Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 437 (D.N.J. 2021) (quoting *O'Connor*, 496 F.3d at 320); *see also Miller Yacht Sales*, 384 F.3d at 100 (explaining that the Third Circuit has not laid down a specific rule for personal jurisdiction and instead approaches each case individually, taking "a 'realistic approach' to analyzing a defendant's contacts with a forum") (citation modified).

Here, Plaintiff argues that AT&T is not "a mere holding company without employees or a business presence"; rather, it "is directly responsible for filing financial reports with the SEC and conducting business operations, including through and for its subsidiaries such as AT&T Mobility, LLC." (Sur-reply at 7). However, Plaintiff has failed to provide sufficient evidence to establish alter ego jurisdiction over AT&T through AT&T Mobility, LLC. Once the defendants move to dismiss for lack of personal jurisdiction, the "'plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" *Patterson*, 893 F.2d at 603-04 (quoting *Time Share Vacation Club*, 735 F.2d at 66 n.9). AT&&T produced affidavit evidence establishing that it is a "legally and factually separate corporate entity, distinct from its subsidiaries," including AT&T Mobility LLC, "has different officers than its subsidiaries; maintains separate books from its subsidiaries; pays taxes separately from its subsidiaries; and is not involved in the day-to-day operation of its subsidiaries." (Phillips Decl. ¶¶11-12). Plaintiff relies upon an excerpt of AT&T's Form 10-K for the fiscal year ending in December 31, 2023, which states:

> We have agreements with various third-party financial institutions pertaining to the sales of certain types of our accounts receivable. The most significant of these programs consists of receivables arising from equipment installment plans, which are sold for cash and beneficial interests, such as deferred purchase price, when applicable. Under the terms of our agreement for this program, we continue to service the transferred receivables on behalf of the financial institutions.

(*See* Sur-reply at 7; Compl. ¶ 19). However, Plaintiff fails to show that this language demonstrates AT&T and AT&T Mobility LLC do not maintain separate existences from one another. As such, the Court finds that Plaintiff has failed to meet his burden in establishing alter ego jurisdiction over AT&T through AT&T Mobility LLC.

## B.  The Complaint Fails to State Any Claims for Relief

Notwithstanding the Court's lack of personal jurisdiction over AT&T, the Court will consider whether Plaintiff has set forth any viable claims. AT&T argues dismissal is warranted because Plaintiff fails to state any claims for relief. (*See* Br. at 23-40). The Court agrees and dismisses Counts One, Two, Six, Seven, Eight, Nine, and Ten without prejudice, and Counts Three, Four, and Five with prejudice.[5]

### i.  Breach of Contract (Count One)

AT&T argues the breach of contract claim fails because Plaintiff's allegation relies on the proposition that an "indorsed remittance coupon" constitutes a "sufficient legal tender." (Br. at 24-26). Plaintiff does not address this issue in either his opposition or sur-reply. As the Complaint fails to identify any contract or contractual provision requiring AT&T to accept the indorsed remittance coupon as legal tender, the Court will dismiss Count One of the Complaint.

To state a claim for breach of contract under New Jersey law, a plaintiff must establish four elements: (1) the parties entered into a valid contract, (2) the plaintiff performed its contractual obligations, (3) the defendant did not perform its obligations, and (4) the defendant's breach causes

---

[5] The parties dispute whether Plaintiff's claims are premised solely on sovereign citizen theories and must be dismissed on this basis. (*See* Br. at 23-40; Opp'n; Reply at 2-5; Sur-reply at 2-4). "'[S]overeign citizen' or 'straw man' arguments have been widely rejected as frivolous by federal and state courts." *Blinke v. Sweeney*, No. 23-01259, 2023 WL 8361795, at *2 (M.D. Pa. Nov. 9, 2023), *report and recommendation adopted*, No. 23-01259, 2023 WL 8359908 (M.D. Pa. Dec. 1, 2023) (citing *e.g.*, *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011)) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts."). Notwithstanding the parties' arguments on this issue, the Court considers the merits of each of the counts raised in the Complaint.

the plaintiff to incur damages. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *Accounteks.Net, Inc. v. CKR Law, LLP*, 2023 WL 3331802, at *8 (N.J. Super. Ct. App. Div. May 9, 2023).

Upon thorough review of the Complaint, it is unclear what the underlying "contract" between the parties consisted of or any of its purported terms. Plaintiff alleges that AT&T has "ignored and refused" his request "to satisfy any alleged obligations by way of an indorsed remittance coupon as a negotiable instrument and registered security in certificated form as a tender of payment in full accord and satisfaction." (Compl. ¶ 41). According to the "Notice of Dispute," which is attached to the Complaint, Plaintiff states "[a]ll charges to [his] account as a claim by AT&T of any alleged debt owed, whether past, present or in the future, are hereby disputed and are deemed a billing error." (ECF No. 1, Ex. A at 26).

However, even if the Court were to assume the parties had a contract, Plaintiff fails to cite to *any* provisions of the contract that would require AT&T to accept an indorsed remittance coupon. Other courts have found similar arguments unavailing and dismissed breach of contract claims on this ground. *See, e.g.*, *Harp v. Police and Fire Fed. Credit Union*, No. 23-2577, 2023 WL 5152625, at *3 (E.D. Pa. Aug. 10, 2023) (dismissing with prejudice breach of contract claim where it was clear from the complaint's exhibits that the plaintiff's "bill of exchange" was not valid legal tender for payment of credit card debt, and "rather than a legally enforceable document noting an existing debt that [the defendant] owed to her, [the plaintiff] simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to [the defendant] as valid legal tender for her credit card debt"); *McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555, 555-56 (7th Cir. 2015) (finding the plaintiff's assertion that his loan obligations were discharged by lender's refusal to honor a "bill of exchange" that the plaintiff said made the United States

Treasury responsible for his debt to be frivolous); *Hennis v. Trustmark Bank*, No. 21-20, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) (collecting cases and noting that "[f]rom coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous"); *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 758-60 (W.D. Va. 2007) (finding the plaintiff's "claim that tendering the Bill of Exchange amounted to legitimate performance of the contract . . . highly implausible" when "the legal authorities [the p]laintiff cites and the facts she alleges suggest that she did not tender payment, but rather a worthless piece of paper"), *aff'd*, 282 F. App'x 260 (4th Cir. 2008) (per curiam). Accordingly, the Court dismisses Count One of the Complaint without prejudice.

### ii.  Breach of Fiduciary Duty (Count Two)

AT&T also moves to dismiss Plaintiff's breach of fiduciary claim because the Complaint fails to adequately allege facts demonstrating a fiduciary relationship between Plaintiff and AT&T. (Br. at 26-29). Further, AT&T argues Plaintiff's attempt to assert a claim for breach of a fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* fails because Plaintiff neither identifies the purported duty that was breached nor provides any details regarding the actual plan. (*Id.* at 29-30). In his sur-reply, Plaintiff argues AT&T has breached its fiduciary duties owed to him as a beneficiary. (Sur-reply at 8). The Court agrees with AT&T and dismisses Count Two.

To plead a breach of fiduciary duty, a plaintiff must allege: "(1) a fiduciary relationship comprised of two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship, and (2) a violation of that trust." *Wiatt v. Winston & Strawn, LLP*, No. 10-6608, 2011 WL 2559567, at *9 (D.N.J. June 27, 2011) (citation modified). "The threshold inquiry in any breach of fiduciary analysis is, therefore, whether a

18

fiduciary relationship exists between the parties." *Equiom (Isle of Man) Ltd. v. Jacobs*, No. 16-4362, 2017 WL 6550481, at *3 (D.N.J. Dec. 22, 2017) (citing *SalandStacy Corp. v. Freeney*, No. 11-3439, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012)).

The New Jersey Supreme Court has defined the elements of a claim for breach of fiduciary duty as follows:

> The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.

*McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002) (citation modified).

Plaintiff claims that as a "beneficiary" of AT&T and its "Trust account(s)," AT&T has obligations (i) "to the financial success of Plaintiff," (ii) "to ensure UCC Article 3 is properly and lawfully abided by, adhered to and followed," and (iii) "to ensure that the Emergency Banking Act of 1933 is lawfully abided by, adhered to and followed." (Compl. ¶¶ 44, 46-47). Plaintiff appears to assert that AT&T breached its fiduciary duties by not mentioning the "benefits of special indorsements" to him, resulting in Plaintiff having "an imbalanced account and having to participate in involuntary peonage to acquire extraneous and entirely irrelevant Federal Reserve debt notes." (*Id.* at ¶¶ 52-53). However, Plaintiff fails to allege any facts to support his proposition that AT&T had a fiduciary duty to ensure his financial successor compliance with UCC Article 3 and the Emergency Banking Act of 1933. Notwithstanding, even if such duty existed, Plaintiff fails to allege how Plaintiff's failure to accept "orders," "conditional acceptances," or "special indorsements on negotiable instruments" would violate this purported duty. *See Thomas v. BMO Harris Bank*, No. 23-00224, 2024 WL 477542, at *8 (S.D. Ala. Jan. 19, 2024) (finding bank's failure to comply with the plaintiff's "nonsensical instructions" to "transfer the principal's balance

to the principal's account# . . . for set off" on his mortgage supported neither the existence of a fiduciary relationship between the parties nor the breach of it).

Further, to the extent Plaintiff attempts to assert a breach of a fiduciary duty under ERISA, his claim similarly fails to survive the motion to dismiss stage. Plaintiff alleges AT&T has violated ERISA by failing to release "full vested funds held in the Fidelity Investment Trust account as a one-time payment." (Compl. ¶¶ 29, 34, 105). Section 502(a) authorizes a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim for relief under Section 502(a)(1)(B), a plaintiff must establish his or her "'right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)); *see also Manning v. Sanofi-Aventis, U.S. Inc.*, No. 11-1134, 2012 WL 3542284, at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(1)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(1)(B)."). In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan from which a court can infer this legally enforceable right. *See, e.g., Metropolitan Neurosurgery v. Aetna Life Ins. Co.*, No. 22-0083, 2023 WL 5274611, at *4 (D.N.J. Aug. 16, 2023); *Atlantic Plastic Hand Surgery, P.A. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018); *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, No. 21-1703, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022); *University Spine Ctr. v. Edward Don & Co., LLC*, No. 22-3389, 2023 WL 4841885, at *6 (D.N.J. July 28, 2023).

The Court finds Plaintiff fails to identify any specific plan provisions entitling payment of benefits. *Atlantic Plastic & Hand Surgery, PA*, 2018 WL 5630030, at *7; *see also Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) ("Only the words of the Plan itself can create an entitlement to benefits."). "Moreover, several courts in this circuit have dismissed denial of benefits claims for failure to allege the specific provision violated in an ERISA-governed plan." *See*, *e.g.*, *Atlantic Plastic & Hand Surgery, PA*, 2018 WL 5630030, at *8 (citing *Piscopo v. Public Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015) (dismissing an ERISA claim because the plaintiff had "not pointed to any provision of a [ ] benefit plan suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan"), *aff'd*, 650 F. App'x 106, 110 (3d Cir. 2016) (affirming dismissal of an ERISA claim for failure to provide details concerning "the plan, or provision showing that [the plaintiff] is entitled to retirement benefits"); *Atlantic Plastic Hand Surgery, P.A.*, 2018 WL 1420496, at *10 (dismissing an ERISA claim because the complaint failed "to identify any specific provision in the Plan from which the [c]ourt can infer that [the] [p]laintiffs were entitled to compensation at the 'usual and customary rate' for out-of-network medical services")); *Atlantic Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, No. 20-13834, 2022 WL 17582546, at *2 (D.N.J. December 12, 2022) (noting the plaintiffs' proposed second amended complaint "now includes the information that I found was required to allege a sufficient injury-in-fact to establish Article III standing— 'specific references to the portions of the Patients' plans that entitle the Patients to the benefits they claim they are entitled to'"); *Advanced Ortho. and Sports Med. Instit. o/b/o Patient MS v. Anthem Blue Cross Life and Health Ins. Co.*, No. 21-12397, 2022 WL 993329, *4 (D.N.J. Apr. 1, 2022) ("Advanced Orthopedics fails to specify in its Complaint 'which actual portions of the plans were violated, when they were violated, or how they were violated.'" (quoting *LeMoine v. Empire*

*Blue Cross Blue Shield*, No. 16-6786, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018))); *Abramson v. Aetna Life Ins. Co.*, No. 22-5092, 2023 WL 3199198, at *11 (D.N.J. May 2, 2023) ("[T]he [c]omplaint fails to identify any [p]lan provision that requires Aetna to pay B.H. and/or Dr. Abramson at the amount claimed. Such an allegation is required for Dr. Abramson's cause of action to be sustained."); *K.S. v. Thales USA, Inc.*, No. 17-7489, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019) ("[S]everal . . . decisions from this District have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan."). Without specifying any terms of the plan that were purportedly violated, the claim fails.

Accordingly, the Court dismiss Count Two of the Complaint without prejudice.[6]

### iii.  Violations of Criminal Statutes (Count Three through Ten)

Finally, the Court notes that Counts Three through Ten must be dismissed because they are not viable claims. In Counts Three through Ten, Plaintiff alleges that AT&T violated numerous federal criminal statutes: 18 U.S.C. §§ 1956, 2314, 1348, 1581, 1583, 1584, 1589, 1593A. (Compl. ¶¶ 55-102). As noted by the Third Circuit in *Yoder v. MacMain Law Group, LLC*, 691 F. App'x 59, 60-61 (3d Cir. 2017), there is longstanding precedent that "bare criminal statute[s]" do not automatically give rise to a private cause of action, *see Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) (refusing to infer a private right of action from a "bare criminal statute"), "and a private party has no right to compel enforcement of criminal laws," *see Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981). 18 U.S.C. § 1956 (Count Three), 18 U.S.C. §

---

[6] In his sur-reply, Plaintiff argues AT&T also engaged in activity that constitutes identify theft, trademark infringement, securities fraud, and unjust enrichment. (Sur-reply at 5-7). "[C]ourts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss." *Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2023 WL 2263674, at *5 (D.N.J. Feb. 27, 2023) (citing *Pennsylvania. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation modified)). As such, the Court will not consider these newly raised allegations.

2314 (Count Four), and 18 U.S.C. § 1348 (Count Five) do not provide for a private right of action, they must be brought by the United States in a criminal action. *See Karupaiyan v. Singh*, No. 21-3163, 2022 WL 6634603, at *1 (3d Cir. Mar. 1, 2022) (finding that 18 U.S.C. § 1956 does not create a private right of action); *Lindsay v. Ahuja*, No. 17-1771, 2017 WL 11707316, at *3 (D. Conn. Nov. 21, 2017) (finding that 18 U.S.C. § 2314 does not create a private right of action); *Wilson v. Tahbazof*, No. 23-5624, 2023 WL 9233486, at *2 (N.D. Cal. Dec. 20, 2023 (finding that 18 U.S.C. § 1348 does not create a private right of action), *report and recommendation adopted*, 2024 WL 1236654 (N.D. Cal. Jan. 8, 2024). Accordingly, the Court dismisses Counts Three through Five with prejudice.

Plaintiff also asserts these remaining Title 18 claims: 18 U.S.C. § 1581 (peonage), 18 U.S.C. § 1583 (enticement into slavery), 18 U.S.C. § 1584 (sale into involuntary servitude), 18 U.S.C. § 1589 (forced labor), and 18 U.S.C. § 1593A (benefiting financially from violations of the foregoing crimes). Under 18 U.S.C. § 1595, "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator." To the extent a private right of action exists under these statutes, Plaintiff's Complaint fails to allege facts sufficient to state plausible claims. Plaintiff does not allege that AT&T subjected him to any type of compulsory service, nor does he allege facts that, if taken as true, are sufficient to establish AT&T committed these crimes. Accordingly, the Court dismisses Counts Six through Ten without prejudice.[7]

---

[7] In a letter dated January 16, 2025, Plaintiff stated that he intended to file a new lawsuit against AT&T regarding a purported data breach and requested consolidation of these new claims with the current claims before the Court. (ECF No. 17). As discussed *supra*, the Court has dismissed Counts One, Two, Six, Seven, Eight, Nine, and Ten without prejudice. If Plaintiff files an amended complaint curing the deficiencies outlined in this Opinion, Plaintiff may raise new allegations regarding the purported data breach therein.

IV.    **CONCLUSION**

For the reasons set forth above, AT&T's motion to dismiss to the Complaint (ECF No. 8) is **GRANTED**, and the Complaint (ECF No. 1) is **DISMISSED without prejudice**, except for Counts Three through Five, which are **DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

DATED: 6/17/2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge